Michael D. McGill SBN 231613
*mcgill@policeattorney.com*
Danielle K. Little SBN 239784
*danielle@policeattorney.com*
**LACKIE, DAMMEIER & MCGILL APC**
367 North Second Avenue
Upland, CA 91786
Tel: (909) 985-4003
Fax: (909) 985-3299

Attorneys for Plaintiff
ROBERT "LEO" MCSWEENEY

FILED

2008 OCT 23 PM 2:28

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

CV08-07006 JFW PLAx

ROBERT "LEO" MCSWEENEY,

Plaintiff,

vs.

CITY OF BELL, A Public Entity; CITY OF BELL POLICE DEPARTMENT, A Public Agency; ROBERT RIZZO, as City Manager; BRUCE D. PRAET, In his Capacity As the City Attorney; ANDY PROBST, Individually and as Chief of Police; MICHAEL CHAVEZ. Individually and as the Assistant Chief of Police; ANTHONY MIRANDA, Individually and as a Captain; STEVE FINKELSTEIN, Individually and as a Captain; SERGIO CAMACHO, Individually and as a Lieutenant; and DOES 1 THROUGH 10 INCLUSIVE;

Defendants.

Case No.:

**COMPLAINT FOR DAMAGES BASED ON:**

1. Whistleblower Retaliation, Cal. Labor Code §1102.5
2. Violation of Bane Act, Cal. Civil Code § 52.1
3. Wrongful Termination In Violation Of Public Policy (Constructive Termination)
4. Breach of Contract
5. Breach of Covenant of Good Faith and Fair Dealing
6. Intentional Interference with Contractual Relations
7. Defamation
8. False Light
9. Violations of Civil Rights, (42 U.S.C. Section 1983)
10. Violations of USERRA, (38 U.S.C. §4301 *et. seq.*)
11. Cal. Military & Vet. Code

**DEMAND FOR JURY TRIAL**
F.R. Civ. P. Rule 38
C.D. Cal. Local Rule 38-1]

COMES NOW, ROBERT MCSWEENEY, who demands a jury trial and seeks monetary compensation and injunctive relief against DEFENDANTS on each of the following causes of action.

# I.

## PREFATORY

1.     This is an action for damages and injunctive relief for violations of peace officer Robert McSweeney's civil rights pursuant to 42 U.S.C. §1983, violations of the Uniformed Services Employment and Reemployment Rights Act (hereinafter 'USERRA") pursuant to 38 U.S.C. §4301 *et. seq.*, and *inter alia*, state whistleblower violations, retaliation, harassment, wrongful termination, breach of contract and defamation.  Defendants, his former employer and high-ranking officers and officials unlawfully retaliated and took myriad adverse actions against Plaintiff, which included causing his constructive discharge after Plaintiff lawfully exercised his state and federal civil and constitutional rights.

# II.

## JURISDICTION AND VENUE

2.     PLAINTIFF'S action is authorized by 42 U.S.C. §1983 which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States.  PLAINTIFF'S action is also authorized by 38 U.S.C. §4301 *et. seq.*  which provides for redress for the deprivation of rights against members of the armed forces.

3.     Jurisdiction is conferred on this Court by 28 U.S.C. §1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. §1983 to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution of the United States and by 28 U.S.C. §1343(4) which provides for the protection of civil rights of members and veterans of the armed forces.  Jurisdiction is also conferred on this Court by 38 U.S.C. 4323(b).

4.     Federal supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.

**5.**     Venue is proper in the Central District of California because the wrongs alleged herein occurred within the City of Bell, County of Los Angeles, which is located within the Central District.

## III.

## PARTIES

6.     Plaintiff ROBERT MCSWEENEY was at all times relevant to the allegations contained herein, a resident of Los Angeles County, State of California.

7.     Plaintiff, at all times relevant to the allegations contained herein, was employed by the CITY OF BELL ("CITY") as a police officer with the Bell Police Department and was a member of the Bell Police Officers Association ("BPOA").

8.     CITY is a duly enacted municipality organized and existing under the laws of the State of California and wholly situated in the County of Los Angeles. The Bell Police Department (hereinafter "DEPARTMENT") is an operating Department, Agency, and/or Office of CITY.

9.     Defendant ROBERT RIZZO ("RIZZO") was, at all times relevant to the allegations contained herein, the Chief Administrator Officer and City Manager for the CITY.  At all times relevant to the allegations contained herein, for all purposes connected with the management of employment relations matters within the CITY and involving CITY'S employees, CITY delegated its final policy-making authority to RIZZO.  The CITY adopted and ratified each of the decisions made by RIZZO in his official capacity as alleged herein as the CITY'S own policies, customs, practices and/or decisions, as if same had been promulgated directly by the CITY, except as expressly appears herein to the contrary.

10.     Defendant BRUCE D. PRAET ("PRAET") was at all times relevant to the allegations contained herein, employed by CITY as its City Attorney.  In doing the things alleged to have been done herein, PRAET acted under color of

state law, within the course and scope of his employment, and as an official policy-maker for the CITY. As a Department Head, PRAET is vested with policy-making authority over actions such as the ones at issue in this Complaint

11.   Defendant ANDY PROBST ("PROBST") was at all times relevant to the allegations contained herein, employed by CITY as its Chief of Police for the DEPARTMENT. PROBST is sued individually and in his official capacity. In doing the things alleged to have been done herein, PROBST acted under color of state law, within the course and scope of his employment and as an official policy-maker for CITY. As a Department Head, PROBST is vested with policy-making authority over actions such as the ones at issue in this Complaint.

12.   Upon information and belief, PROBST is and was at all times relevant to the allegations contained herein, a resident of Los Angeles County

13.   PROBST, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, is being sued individually.

14.   Defendant MICHAEL CHAVEZ ("CHAVEZ") was at all times relevant to the allegations contained herein, employed by CITY as Assistant Chief of Police for the DEPARTMENT. CHAVEZ is sued individually and in his official capacity. In doing the things alleged to have been done herein, CHAVEZ acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY. As a Department Head, CHAVEZ is vested with policy-making authority over actions such as the ones at issue in this Complaint.

15.   Upon information and belief, CHAVEZ is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

16.   CHAVEZ, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, is being sued individually.

17.   Defendant ANTHONY MIRANDA ("MIRANDA") was at all times relevant to the allegations contained herein, employed by CITY as a Captain for

the DEPARTMENT.  MIRANDA is sued individually and in his official capacity. In doing the things alleged to have been done herein, MIRANDA acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY.  As a Department Head, MIRANDA is vested with policy-making authority over actions such as the ones at issue in this Complaint.

18.    Upon information and belief, MIRANDA is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

19.    MIRANDA, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, is being sued individually.

20.    Defendant STEVE FINKELSTEIN ("FINKELSTEIN") was at all times relevant to the allegations contained herein, employed by CITY as a Captain for DEPARTMENT. FINKELSTEIN is sued individually and in his official capacity. In doing the things alleged to have been done, FINKELSTEIN acted under color of state law, within the course and scope of his employment, and as an official policy-maker for CITY. As a Department Head, FINKELSTEIN is vested with policy-making authority over actions such as the ones at issue herein.

21.    Upon information and belief, FINKELSTEIN is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

22.    FINKELSTEIN, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, is being sued individually.

23.    Defendant SERGIO CAMACHO (hereinafter "CAMACHO") was at all times relevant to the allegations contained herein, employed by the CITY as a Lieutenant for the DEPARTMENT.  CAMACHO is sued individually and in his official capacity.  In doing the things alleged to have been done herein, CAMACHO acted under color of state law, within the course and scope of his employment, and as an official policy-maker for the CITY.  As a Department

Head, CAMACHO is vested with policy-making authority over actions such as the ones at issue in this Complaint.

24. Upon information and belief, CAMACHO is and was at all times relevant to the allegations contained herein a resident of Los Angeles County.

25. CAMACHO, who at all relevant times mentioned herein, acted intentionally, wantonly and maliciously, is being sued individually.

26. Defendants DOES 1 through 100 are unknown or unidentified at this time, but are employees of CITY. Upon information and belief, PLAINTIFF alleges that each Doe is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein. When the true names and capacities of said Defendants become known to Plaintiff, Plaintiff will seek relief to amend this Complaint to show the true identities of each said DOE in place of their fictitious names as DOES 1 through 100.

27. Defendants, and each of them, were the agent, employee and servant of every other Defendant and each Defendant alleged herein acted in the course and scope of said agency, service and employment at all relevant times.

## IV.

## FACTS COMMON TO ALL COUNTS

### *INITIAL HISTORY*

28. PLAINTIFF is a military veteran who began his military service on or about July 1990 with the United States Marine Corps.

29. Plaintiff is still a member of the United States Marine Corps, in its Active Reserves Unit.

30. In or about March 2004, CITY hired PLAINTIFF.

31.     Before CITY hired PLAINTIFF, Plaintiff had been in the process of becoming a Marine Corps reservist. He became a reservist soon after he began CITY employment in or about October 2004.

32.     In or about April 2005, PLAINTIFF received a military activation order.

33.     In or about June 2005, Plaintiff was called to active military duty whereupon he commenced military training that lasted from about June 2005 until about August 2005.

34.     Not long thereafter, in or about April 2005, PLAINTIFF informed then-DEPARTMENT Police Chief Dennis Tavanelli, then-Deputy Police Chief PROBST, Captain MIRANDA and Sergeant Cochran that he was called to active military service approximately one and one-half 1 ½ months before he was to deploy to Iraq.

35.     In or about September 2005 PLAINTIFF left to serve in Iraq.

36.     At the time of PLAINTIFF'S military deployment, CITY had employed PLAINTIFF for approximately 15 months.

37.     PLAINTIFF participated in over 150 combat and convoy missions as the Platoon Sergeant for 42 Marine troops, including service in Iraq's Al Anbar Province. PLAINTIFF received an extremely exemplary combat fitness report and was awarded a Navy Achievement Medal for his Iraq military service.

38.     PLAINTIFF'S total military service lasted approximately one year between June 2005 and June 2006.

32.     Upon information and belief, while PLAINTIFF was on active duty with the United States Marine Corps, DEFENDANTS began to publicly inquire about PLAINTIFF'S expected return from active military service in a negative way and complained to CITY personnel regarding same.   DEFENDANTS also made numerous statements challenging PLAINTIFF'S priorities and questioning

PLAINTIFF'S commitment to working for DEPARTMENT and whether PLAINTIFF believed it was more important for him to be working for CITY or for the United States Marine Corps.  These statements were meant and understood by Plaintiff to mean that he should make every effort to return to CITY employ as soon as possible or face negative employment consequences and that in fact, his career with CITY was in jeopardy.

33.     In or about MAY 2006, Plaintiff learned that CHAVEZ had been repeatedly and angrily commenting to PLAINTIFF'S colleagues, "Where the Hell is McSweeney" and "When is McSweeney going to be coming back to work?"

34.     Prior to PLAINTIFF'S return to CITY employ and in or about June 2006, PLAINTIFF, while still on active duty, began the process of demobilization from his Reserve Unit.  As part of the demobilization process, PLAINTIFF was assigned a two-week mission to train deploying Marines at Camp Lejeune in North Carolina who were slated to deploy on the same Iraq mission PLAINTIFF had just returned from.

35.     PLAINTIFF was informed and thereon believes that CHAVEZ repeatedly expressed his anger concerning PLAINTIFF'S Camp Lejeune mission to CITY personnel and complained that same would further delay PLAINTIFF'S return to the DEPARTMENT.

36.     Because of CHAVEZ' continued expressed hostility towards PLAINTIFF'S active military service, PLAINTIFF asked one of his military commanding officers to release him early.  PLAINTIFF took the aforementioned action solely because he feared negative employment consequences if he did not imminently return to the DEPARTMENT as DEFENDANTS wished and so that CHAVEZ and other high-ranking members of the DEPARTMENT would not exhibit any further anger towards him.  Further, PLAINTIFF'S having to approach his military commanding officer because of DEFENDANTS' actions and his fear

1  that he would be subject to negative employment actions by CITY caused

2  PLAINTIFF great embarrassment, shame and mortification.

3        37.    PLAINTIFF met USERRA'S timely application requirement.

4        38.    In or about June 2006, approximately three or four days before

5  PLAINTIFF actually returned to work at the DEPARTMENT, CAMACHO

6  advised PLAINTIFF that if he did not want to get in trouble he should "change his

7  ways." CAMACHO told PLAINTIFF that since he had deployed for military

8  service, "things had changed" and warned that PLAINTIFF "should be very

9  careful." PLAINTIFF advised CAMACHO that he did not understand

10  CAMACHO'S admonition and warning.

11

12        39.    In or about June 2006, on PLAINTIFF'S first night back to work and

13  continuously thereafter, PLAINTIFF was discriminated against and subjected to

14  numerous adverse work conditions.  These unlawful acts, included, *inter alia*:

15  being shunned and ignored during briefings; being informed that he would be

16  treated as if her were an entry level employee despite his lawful seniority; being

17  advised that he had to work with a training officer who would complete a daily

18  observation report of his work, as if he were an entry-level employee.

19        40.    Upon information and belief, DEFENDANTS' actions were designed

20  to embarrass, harass and discriminate against PLAINTIFF, by *inter alia*,

21  attempting to document and fabricate claims of PLAINTIFF'S alleged deficiencies

22  in order to set him up for adverse employment actions.

23        41.    Upon information and belief, CITY failed to properly train its

24  personnel, including DEPARTMENT personnel about its legal requirements

25  concerning its employees who are called to active duty under federal and state law.

26        42.    Upon information and belief, CITY failed to take measures to ensure

27  that its personnel, including DEPARTMENT personnel complied with the

28

---

**COMPLAINT FOR DAMAGES**

1  requirements concerning its employees who are called to active duty under federal
2  and state law.

3    43.    Upon information and belief, CITY failed to prevent and/or end
4  instances in which its personnel, including DEPARTMENT personnel took
5  unlawful actions against CITY employees because of such employees military
6  duties as required by federal and state law.

7    44.    Upon information and belief, CITY has a thirty-day paid military
8  leave policy.

9    45.    PLAINTIFF was not afforded CITY'S thirty-day paid military leave
10 policy.  In fact, when PLAINTIFF returned from his military deployment, all his
11 holiday, sick, and compensatory time had been zeroed out and it took PLAINTIFF
12 more than two and half (2 ½) months for CITY to correct the error despite
13 PLAINTIFF'S numerous requests for assistance.  Upon information and belief,
14 CITY'S creation of the problem, as well as CITY'S delay in correcting same was
15 done intentionally, maliciously and wantonly for the sole purposes of further
16 harassing, retaliating and discriminating against PLAINTIFF.

17   46.    PLAINTIFF was denied accrued time for time in the Reserves.

18   47.    PLAINTIFF was denied a pay raise that he was entitled to.

19   48.    In or about late July 2006, PLAINTIFF and another CITY officer (K.
20 Owens) observed egregious administrative, criminal and civil misconduct by a
21 CITY employee, Sergeant Jimenez who threatened an innocent pedestrian. Officer
22 Owens and PLAINTIFF both agreed that what they had observed was misconduct.
23 Officer Owens indicated that since he was the senior officer, he would take care of
24 reporting the witnessed misconduct.

25   49.    Approximately one week after witnessing the aforementioned
26 misconduct, the DEPARTMENT informed PLAINTIFF that he would be

interviewed as a witness in an Internal Affairs investigation concerning the July 2006 pedestrian incident.

50.   In or about July 2006, a picture that PLAINTIFF had sent to CAMACHO while PLAINTIFF was serving in Iraq and that CAMACHO had kept on a wall in CAMACHO'S office was returned to PLAINTIFF'S mailbox.

51.   In or about July 2006, an American flag PLAINTIFF had taken on numerous Iraq combat missions and which he had mailed to the DEPARTMENT in dedication to his colleagues was thrown in PLAINTIFF'S mailbox.

52.   On or about August 14, 2006, shortly after PLAINTIFF received a Notice of Investigation, PLAINTIFF was interviewed by FINKELSTEIN and MIRANDA concerning the misconduct he observed in July 2006.  PLAINTIFF truthfully testified about the facts and circumstances regarding same.

53.   After PLAINTIFF testified truthfully about the misconduct, CITY personnel continued their campaign to harass PLAINTIFF.

54.   The day after PLAINTIFF testified, PLAINTIFF arrived at work at the DEPARTMENT and found a piece of paper that had a symbol of a bird with the words "Blue Falcon" written beneath in his mailbox).  In the Marine Corps, such a symbol is commonly and colloquially known and understood to mean that one has "fucked over one of his buddies."  Further, upon information and belief, being referred to as Blue Falcon, is considered one of the worst things a Marine can do or be, because when someone labels a Marine as such, they are saying, essentially, that the targeted person cannot be trusted, is dishonest and/or disloyal; also, a Marine labeled as a Blue Falcon is often shunned by other Marines.

55.   On or about August 28, 2006, CITY terminated Plaintiff.  During his final meeting with PROBST, CHAVEZ, MIRANDA and another CITY employee, PLAINTIFF asked the group to tell him the reasons for his termination.  CITY personnel refused to do so.  Specifically, PROBST would only tell PLAINTIFF "I

1  am sorry to inform you but you have not met the probationary standards at Bell

2  P.D.  We are going to have to let you go."  PROBST then gave PLAINTIFF twenty

3  minutes to clear out his locker and leave the DEPARTMENT premises.  Sgt.

4  Jimenez and MIRANDA escorted PLAINTIFF to his vehicle in full view of

5  prisoners and PLAINTIFF'S coworkers.  As PLAINTIFF was placing his property

6  in his vehicle, MIRANDA ordered him to surrender his badge and police officer

7  identification in front of the prisoners.

8      56.    PLAINTIFF was terminated because of his disclosure of misconduct

9  and because of his military service.

10     57.    After his unlawful termination, PLAINTIFF retained legal counsel

11  and challenged same.

12

13

14                        *SETTLEMENT AGREEMENT*

15     58.    In or around December 1, 2006, DEFENDANTS entered into a

16  written Settlement Agreement with PLAINTIFF which, *inter alia*, called for the

17  following: a) PLAINTIFF'S immediate reinstatement with benefits; b)

18  PLAINTIFF to be deemed to have successfully completed his probationary period

19  and considered to be a permanent and regular employee; c) closure of any and all

20  administrative investigations with no further action taken; d) placement of

21  PLAINTIFF on administrative leave for four months while PLAINTIFF sought

22  other employment; e) PLAINTIFF'S administrative leave status to be extended in

23  three month increments for 12 months; f) payment of PLAINTIFF'S base salary

24  during the administrative leave period and half of his average overtime salary; g) in

25  the event PLAINTIFF obtained other employment, PLAINTIFF would be paid

26  $85,000, in addition to the aforementioned salary and benefits, with a bonus of

27  $10,000 if he could secure other employment within the first six months of the

28  agreement; and f) in the event PLAINTIFF did not obtain other employment, "the

1   Department would return McSweeney to full duty as a Bell police officer and pay

2   him a total of forty-five thousand dollars ($45,000)."

3      59.   The Agreement became effective on or about December 2006.

4      60.   At all times relevant herein, PLAINTIFF complied with all material

5   terms of the Settlement Agreement.

6      61.   At all times relevant herein, notwithstanding the clear provisions of

7   the Settlement Agreement, throughout the subsequent year following its effective

8   date, DEFENDANTS continued to harass, discriminate and retaliate against

9   PLAINTIFF by breaching the provisions of the Settlement Agreement by *inter*

10  *alia*, failing to remit timely payments of PLAINTIFF'S salary and obstructing

11  PLAINTIFF'S rights under the Settlement Agreement.

12     62.   PLAINTIFF was not able to obtain other employment due to

13

14  DEFENDANTS' unlawful actions in continually breaching the Agreement.

15     63.   On numerous occasions, PLAINTIFF properly, timely and adequately

16  requested that he be reinstated pursuant to the terms of the Agreement.

17     64.   Further, DEFENDANTS have failed, paid late and/or continue to fail

18  to pay PLAINTIFF for the following dates, including, but not limited to: 1) for

19  three paychecks after PLAINTIFF was initially terminated; 2) In 2007 (Oct 19,

20  Nov 2, Nov 16, Nov 30, Dec 14, Dec 28); 3) in 2008 (Jan 11, Jun 27, Jul 11. Jul

21  25, Aug. 8, Aug. 22)

22     65.   Notwithstanding PLAINTIFF'S aforementioned requests to be

23  reinstated, DEFENDANTS refused to reinstate him as required by the terms of the

24  Agreement from until or about August 20, 2008.

25     66.   On or about February 22, 2008, DEFENDANTS told PLAINTIFF'S

26  prospective employer, Chula Vista Police Department, that PLAINTIFF had been

27  fired" a falsehood that was also in violation of the Settlement Agreement.

28

---

**COMPLAINT FOR DAMAGES**

67.   PLAINTIFF has been denied increased pay, overtime, premium and specialty pay associated with assignments and positions, the opportunity to apply for and obtain promotional opportunities, and all other benefits associated with CITY employment.

68.   DEFENDANTS were without any legitimate or lawful basis for failing to reinstate PLAINTIFF or breaching the terms of the Agreement.

### PLAINTIFF'S FINAL RETURN TO WORK

69.   PLAINTIFF returned to work on August 20, 2008.

70.   PLAINTIFF endured approximately six weeks of unlawful harassment, discrimination, retaliation, and defamatory statements levied against him, including but not limited to, statements made against him by high-ranking members of the DEPARTMENT, who likened PLAINTIFF to a former CITY police officer who had been convicted of a crime and who falsely claimed that PLAINTIFF had lied during an Internal Affairs  investigation.

71.   Upon information and belief, on or about August 20, 2008, before PLAINTIFF arrived for his shift, CAMACHO made derogatory, harassing, and defamatory comments about PLAINTIFF during the day and other shifts that in which PLAINTIFF was not present, that "I don't agree with the Chief letting McSweeney come back" and, "If he [PLAINTIFF] says or does anything negative to the female officers we will fire him again," and other negative comments about PLAINTIFF'S character.

72.   On or about August 20, 2008, PLAINTIFF was instructed to ride around with a training officer for approximately two weeks, despite his seniority as a CITY police officer.  He was also informed that after the two-week period, he would be assessed by CITY and DEPARTMENT who would then decide if he could serve as a Police Officer without a training officer.

73.     On or about Aug 21, 2008, FINKELSTEIN interfered with PLAINTIFF'S ability to have required and necessary safety and employment gear causing PLAINTIFF to be without same throughout his duration as CITY officer.

74.     On or about August 29, 2008, before his two-week training period concluded, PLAINTIFF wrote a letter to PROBST: 1) informing same that he had not been told what his new shift would be; 2) requesting that he be permitted to bid for a shift and/or have input in his assignment given that his seniority with the DEPARTMENT; 3) informing him that because of his Marine Corps. military reserve service obligations, he had to adjust his schedule for one weekend per month and  two weeks per year.  PLAINTIFF requested they discuss the aforementioned forthwith, but PROBST refused.

75.     On or about August 30, 2008, PLAINTIFF was informed that MIRANDA ordered PLAINTIFF to remain on the graveyard shift. Graveyard shift was an undesirable shift, especially for one with PLAINTIFF'S seniority.

76.     On or about September 3, 2008, PLAINTIFF'S name was not listed on the duty roster. However, another less senior officer who had reported to work approximately one week after PLAINTIFF had reported was on the duty roster and had been assigned the day shift, a much preferred shift.

77.     On or about August 21, 2008, PLAINTIFF informed CITY Officer Dixon that he wished to assist him with the Police Explorer Program.  Although, Officer Dixon acknowledged he received PLAINTIFF'S letter regarding same and that PLAINTIFF had been *the only* CITY officer to reply to the request for volunteers, neither Dixon nor anyone else at the Department responded to PLAINTIFF and refused to permit him to participate in same.

78.     On or about October 1, 2008, PLAINTIFF was forced to resign because of the continuous pattern and practice of *inter alia*, defamatory statements, lack of support, retaliation, discrimination and improper shunning and ostracizing.

---

**COMPLAINT FOR DAMAGES**

79.   PLAINTIFF was constructively discharged because, *inter alia*, his disclosure of misconduct by Department personnel and his military obligations, challenging DEPARTMENT abuses of authority, asserting his privacy rights, exercising his rights as a citizen of California and because he sought to enforce DEFENDANTS' obligations and his rights under a contract.

80.   PLAINTIFF exhausted the required administrative remedies by timely filing three Government Tort Claims for Damages.

81.   On or about March 11, 2008 PLAINTIFF timely submitted a Tort Claim to CITY.  CITY was required to take affirmative action on the Tort Claim within 45 days of its presentation to same.  Upon information and belief, CITY failed to timely do so and has thus waived any affirmative defense concerning the sufficiency of the Tort Claim.

82.   On or about April 4, 2008 PLAINTIFF timely submitted a second Tort Claim to CITY.  Pursuant to the Calif. Government Code, CITY was required to take affirmative action on the Tort Claim within 45 days of its presentation to same.  Upon information and belief, CITY failed to timely do so.

83.   On or about October 15, 2008, PLAINTIFF timely submitted a third Tort Claim to CITY.

84.   PLAINTIFF was not required to notify other state or federal agency regarding his Complaint, including, *inter alia*, the California Labor Commission.

## V.

### FIRST CAUSE OF ACTION
### WHISTLEBLOWER RETALIATION (CAL. LABOR CODE §1102.5)
### *AGAINST DEFENDANT CITY*

85.   PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

86.   PLAINTIFF was employed by CITY.

87.   PLAINTIFF disclosed information to DEPARTMENT, a government and law enforcement agency, which PLAINTIFF had reasonable cause to believe disclosed violations of state or federal statutes, including but not limited to excessive use of force and abuse of authority.

88.   PLAINTIFF in essence broke the "code of silence," a colloquial phase referring to police officers who report misconduct by other officers.

89.   As a result of PLAINTIFF'S disclosures, DEFENDANTS retaliated against PLAINTIFF for disclosing information to DEPARTMENT, a government and law enforcement agency, which PLAINTIFF had reasonable cause to believe disclosed violations or noncompliance of state or federal statutes, or a violation or noncompliance with state or federal rules or regulations.  DEFENDANTS' retaliatory acts, included but were not limited to threats, ostracism, denied employment opportunities, denied official information, undue scrutiny of work performance, denial of continued employment, denial of a retaliation free work environment, and knowingly making false, misleading or malicious statements which were reasonably calculated to harm or destroy the reputation, authority or official standing of PLAINTIFF as a peace officer and public employee.

90.   CITY'S adverse conduct against PLAINTIFF was intended to have, and in fact did have, a chilling effect on other CITY police, e.g., showed the other officers that coming forward will result in negative actions against them.

91.   CITY made, adopted, ratified and/or enforced rules, regulations, and/or policies designed to prevent employees from disclosing information violations of state or federal statutes to a government or law enforcement agency.

92.   As a legal result of CITY'S above-described conduct, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities, work and occupation, causing PLAINTIFF to sustain damages for loss of income, wages, earning, earning capacity, and other

1  economic damages, including incidental, consequential, and/or special damages, as

2  well as attorneys' fees and costs in an amount according to proof.

3

4                                    **VI.**

5                        **SECOND CAUSE OF ACTION**

6  **VIOLATIONS OF THE BANE ACT (CAL. CIVIL CODE § 52.1)**
                          **AGAINST ALL DEFENDANTS**

7

8      93.    PLAINTIFF repeats and re-alleges each and every allegation set forth

9  above, and incorporates same by reference as though set forth fully herein.

10     94.    California Civil Code §52.1(b) provides: Any individual whose

11 exercise or enjoyment of rights secured by the Constitution or laws of the United

12 States, or of rights secured by the Constitution or laws of this state, has been

13 interfered with, or attempted to be interfered with, as described in subdivision (a),

14 may institute and prosecute in his or her own name and on his or her own behalf a

15 civil action for damages, including, but not limited to, damages under Section 52,

16 injunctive relief, and other appropriate equitable relief to protect the peaceable

17 exercise or enjoyment of the right or rights secured..

18     95.    PLAINTIFF is and/or was a member of the armed forces who sought

19 to exercise his rights as same and is protected by Civil Code §52.

20     96.    PLAINTIFF is a citizen of this State and nation who sought to

21 exercise his rights by, *inter alia,* in reporting what he believed to be police

22 misconduct and challenging unlawful patterns and practices by DEFENDANTS to

23 deprive him of his state, federal and contractual rights and is therefore a member of

24 a group protected by Civil Code §52.

25     97.    DEFENDANTS interfered and/or attempted to interfere with

26 PLAINTIFF'S constitutional, statutory and contractual rights, including but not

27 limited to, the right to be free from unlawful retaliation, harassment and

28

discrimination, and to exercise said rights without being targeted by DEFENDANTS threatening or committing violent acts against him or his property interest in his employment.

98.     PLAINTIFF reasonably believed that if he exercised his right to, *inter alia*, continue to serve in the military, DEFENDANT would commit violence against his property interest right to public employment as a way to prevent PLAINTIFF from exercising said rights as aforementioned or retaliate against PLAINTIFF for having exercised same.

99.     PLAINTIFF was harmed by DEFENDANTS' conduct.

100.    DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF'S harm.

101.    As a legal result of CITY'S above-described conduct, PLAINTIFF suffered incidental, consequential, and/or special damages, as well as attorneys' fees and costs in an amount according to proof.

102.    DEFENDANTS' acts were carried out with a conscious disregard of PLAINTIFF'S rights and with intent to vex, injure, and annoy him, such and constitutes oppression, fraud or malice pursuant to Cal. Civ. Code §3294, entitling him to punitive damages against the non-municipal DEFENDANTS in an amount appropriate to punish and set an example of the individual DEFENDANTS and to deter such conduct in the future, and to set an example for others.

## VII.
### THIRD CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (CONSTRUCTIVE TERMINATION)
### *AGAINST DEFENDANT CITY*

103.    PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

104.   As a result of CITY'S retaliatory conduct, continuous threats, fear of further retaliation, illegal activity, defamatory statements and harassment, PLAINTIFF'S working conditions became so intolerable that he could no longer continue his employment with CITY.

105.   The extremely poor and unmanageable working conditions evoked fear and hostility that permeated the employment setting, such that PLAINTIFF was constructively discharged from his employment.

106.   CITY'S reprisal actions and ratification of same by the other named Defendants caused PLAINTIFF to be hindered, prevented, and/or precluded from performing his usual activities, work and occupation, causing PLAINTIFF to sustain damages for loss of income, wages, earning, earning capacity, and other economic damages, including incidental, consequential, and/or special damages, as well as attorneys' fees and costs in an amount according to proof..

## VIII.

### FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT
### *AGAINST DEFENDANT CITY*

107.   PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

108.   PLAINTIFF and CITY entered into a written contract.

109.   PLAINTIFF did all the things the written contract required him to do.

110.   All conditions required for CITY'S performance of the provisions of the contract occurred.

111.   CITY continuously breached the contract by failing to, *inter alia,* timely reinstate Plaintiff to full employment and timely compensate PLAINTIFF as the written contract required CITY to do.

112.  CITY'S breach of the written contract caused PLAINTIFF to suffer injury, damage, loss, or harm.

113.  As a result of CITY'S above-described conduct, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities, work and occupation, causing PLAINTIFF to sustain damages for loss of income, wages, earning, earning capacity, and other economic damages, in an amount to be ascertained according to proof.

114.  As a legal result of CITY'S above-described conduct, PLAINTIFF suffered incidental, consequential, and/or special damages, in an amount according to proof and PLAINTIFF has and will sustain attorneys' fees and costs in an amount according to proof.

## IX.

## FIFTH CAUSE OF ACTION FOR
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### *AGAINST DEFENDANT CITY*

115.  PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

116.  PLAINTIFF and CITY entered into a written contract.

117.  PLAINTIFF did all of the things that the contract required him to do.

118.  All conditions required for CITY'S performance of the provisions of the contract had occurred.

119.  CITY unfairly, improperly, intentionally and/or negligently interfered with PLAINTIFF'S right to receive all the benefits of the contract.

120.  DEFENDANT'S conduct was a failure to act fairly and in good faith.

121.  PLAINTIFF was harmed by CITY'S aforementioned conduct.

122.  CITY'S conduct caused PLAINTIFF'S injury, damage, loss, or harm.

123.  As a legal result of CITY'S above-described conduct, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities, work and occupation, causing PLAINTIFF to sustain damages for loss of income, wages, earning, earning capacity and other economic damages in an amount to be ascertained.

124.  As a legal result of CITY'S above-described conduct, PLAINTIFF suffered incidental, consequential, and/or special damages and will sustain attorneys' fees and costs in an amount according to proof.

# X.

## SIXTH CAUSE OF ACTION FOR
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### *AGAINST DEFENDANTS RIZZO, PRAET, PROBST,*
### *CHAVEZ, MIRANDA, FINKELSTEIN AND CAMACHO*

125.  PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

126.  There was a written contract between PLAINTIFF and CITY.

127.  DEFENDANTS knew of the contract.

128.  DEFENDANTS intended to disrupt the contract's performance.

129.  DEFENDANTS'S conduct prevented performance or made performance of the contract more expensive or difficult.

130.  PLAINTIFF was harmed by DEFENDANTS' conduct.

131.  DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF'S harm.

132.  As a further legal result of DEFENDANTS' above-described conduct, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities, school, work, education, and

1  occupation, causing PLAINTIFF to sustain damages for loss of income, wages,

2  earning, earning capacity, and other economic damages, in an amount to be

3  ascertained according to proof.

4      133.  As a legal result of DEFENDANTS' above-described conduct,

5  PLAINTIFF suffered incidental, consequential, and/or special damages, and will

6  sustain attorneys' fees and costs in an amount according to proof.

7      134.  The aforesaid acts directed towards PLAINTIFF were carried out with

8  a conscious disregard of his rights and with the intent to vex, injure, and annoy him

9  and constitute oppression, fraud or malice pursuant to Cal. Civil Code §3294

10  entitling PLAINTIFF to punitive damages in a sum which is an amount appropriate

11  to punish and set an example of the individual (non-municipal) DEFENDANTS, to

12  deter such conduct in the future and to set an example for others.

13

14

15  

**XI.**
**SEVENTH CAUSE OF ACTION**
**DEFAMATION**
***AGAINST ALL DEFENDANTS***

16

17      135.  PLAINTIFF repeats and re-alleges each and every allegation set forth

18  above, and incorporates same by reference as though set forth fully herein.

19      136.  DEFENDANTS told at least one prospective employer of

20  PLAINTIFF that PLAINTIFF had been terminated.

21      137.  These prospective employers reasonably understood the statement(s)

22  to mean that CITY had terminated Plaintiff for some negative cause.

23      138.  DEFENDANTS' statements to these employers were false and/or

24  misleading.

25      139.  DEFENDANTS' knew the statements were false and/or had serious

26  doubts about the statements.

27

28

140.   DEFENDANTS also likened PLAINTIFF to a convicted criminal, thus suggesting to third parties that PLAINTIFF had committed a criminal act.

141.   DEFENDANTS publicly suggested and/or indicated to third parties that PLAINTIFF had committed an improper and unlawful act, including, *inter alia*, impermissible sexual harassment against coworker.

142.   DEFENDANTS failed to use reasonable care to determine the truth or falsity of the statements.

143.   DEFENDANTS publicly suggested and/or indicated to third parties that PLAINTIFF had committed an improper and unlawful act, including, *inter alia*, lying in an Internal Affairs investigation.

144.   DEFENDANTS failed to use reasonable care to determine the truth or falsity of the statements.

145.   DEFENDANTS' conduct caused PLAINTIFF to suffer harm.

146.   Because of the facts and circumstances known to the listeners of DEFENDANTS' statements, they tended to injure PLAINTIFF in his occupation and/or to expose him to hatred, contempt, ridicule, or shame and/or or to discourage others from associating or dealing with him.

147.   As a legal result of DEFENDANTS' above-described conduct, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities, work and occupation, causing PLAINTIFF to sustain damages for loss of income, wages, earning, earning capacity, and other economic damages, in an amount to be proved.

148.   As a further legal result of DEFENDANTS' above-described conduct, PLAINTIFF suffered incidental, consequential, and/or special damages, and will sustain attorneys' fees and costs in an amount according to proof.

149.   The aforesaid acts directed towards PLAINTIFF were carried out with a conscious disregard of his rights and with the intent to vex, injure, and annoy

1  him, such as to constitute oppression, fraud or malice pursuant to CCP §3294,

2  entitling PLAINTIFF to punitive damages in a sum which is an amount appropriate

3  to punish and set an example of the individual (non-municipal) DEFENDANTS, to

4  deter such conduct in the future and to set an example for others.

5

6  ## XII.
7  ## EIGHTH CAUSE OF ACTION
   ## FALSE LIGHT (INVASION OF PRIVACY)
8  ### *AGAINST ALL DEFENDANTS*

9  150.  PLAINTIFF repeats and re-alleges each and every allegation set forth

10  above, and incorporates same by reference as though set forth fully herein

11  151.  DEFENDANTS' publicized information or material that showed

12  PLAINTIFF in a false light.

13  152.  The false light created by the aforementioned publication would be

14  highly offensive to a reasonable person in PLAINTIFF'S position.

15  153.  There is clear and convincing evidence that DEFENDANTS knew the

16  publication would create a false impression about PLAINTIFF.
17

18  154.   There is clear and convincing evidence that DEFENDANTS acted

19  with reckless disregard for the truth.

20  155.  There is clear and convincing evidence that DEFENDANTS were

21  negligent in determining the truth of the information or whether a false impression

22  would be created by its publication.

23  156.  PLAINTIFF was harmed and/or sustained harm to his property,

24  business, profession and/or occupation

25  157.  DEFENDANTS' conduct was a substantial factor in causing

26  PLAINTIFF'S harm.

27

28

158.   DEFENDANT publication of the information was made public by communicating it to so many people, including, CITY personnel, that the information was substantially certain to become public knowledge.

## XIII.
### NINTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983)
#### *AGAINST ALL DEFENDANTS*

159.   PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

160.   In doing the things alleged herein, DEFENDANTS violated the rights of PLAINTIFF under Fourteenth Amendments to the United States Constitution. Specifically, DEFENDANTS deprived PLAINTIFF of his rights by its policy and practice of deliberate indifference regarding, *inter alia*: its failure to know and and/or follow DEFENDANTS' own policies and regulations; failure to know and/or upon learning federal and state law as it relates to its obligations and public policy regarding military reservists deploying to and returning from active military duty, and by acting in contravention of said laws and public policy.

161.   Because PLAINTIFF exercised his civil and constitutional rights, DEFENDANTS retaliated against PLAINTIFF as described herein.  Absent said protected activities, PLAINTIFF would have remained a CITY employee, would not have suffered adverse employment actions, and would not have been injured.

162.   Because PLAINTIFF exercised his civil and constitutional rights by insisting that DEFENDANTS permit him to serve his country as PLAINTIFF was required by his Armed Forces Unit, DEFENDANTS retaliated against PLAINTIFF as described herein.  Absent said activities, PLAINTIFF would have remained a CITY employee Department, would not have suffered adverse employment actions, and would not have been injured.

163.   DEFENDANTS' acts and omissions, and each of them, were done under the color of state law in their capacity as a municipality chartered under state law, and as policy making authorities to which DEFENDANT CITY delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

164.   The acts and omissions described above were taken by CITY'S official policy makers as members charged with such responsibility.  It was or should have been plainly obvious to any reasonable policy-making official of CITY that the acts and omissions of DEFENDANTS as alleged herein, taking singly or in conjunction, directly violated and continued to violate PLAINTIFF'S clearly established constitutional and statutory rights.

165.   The individual DEFENDANTS, who are law enforcement professionals and sworn to uphold the constitution, deliberately engaged in harassment, discrimination, retaliation, and violations of PLAINTIFF'S clearly established civil and constitutional rights.  As such, and by the nature of their conduct, the individual DEFENDANTS are not entitled to qualified immunity.

166.   DEFENDANTS' actions caused PLAINTIFF to suffer harm.

167.   As a further legal result of DEFENDANTS above-described conduct, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities work and occupation, causing PLAINTIFF to sustain damages for loss of income, wages, earning, earning capacity, other economic damages, an amount to be ascertained according to proof.

168.   As a legal result of DEFENDANTS above-described conduct, PLAINTIFF suffered incidental, consequential, and/or special damages and will sustain attorneys' fees and costs in an amount according to proof.

169.   The aforesaid acts directed towards PLAINTIFF were carried out with a conscious disregard of his rights and with the intent to vex, injure, and annoy

---

**COMPLAINT FOR DAMAGES**

1   him, such as to constitute oppression, fraud or malice pursuant to CCP §3294,

2   entitling PLAINTIFF to punitive damages in a sum which is an amount appropriate

3   to punish and set an example of the individual (non-municipal) DEFENDANTS, to

4   deter such conduct in the future and to set an example for others.

5

6                                        **XIV.**
                              **TENTH CAUSE OF ACTION**
7              **VIOLATIONS OF USERRA (42 U.S.C. § 4301 *et. seq.*)**
                            **AGAINST ALL DEFENDANTS**
8

9       170.  PLAINTIFF repeats and re-alleges each and every allegation set forth

10  above, and incorporates same by reference as though set forth fully herein.

11      171.  38 U.S.C.A. §4301 sets forth USERRA'S express intent in that "[t]he

12  purposes of this chapter are (1) to encourage noncareer service in the uniformed

13  services by eliminating or minimizing the disadvantages to civilian careers and

14  employment which can result from such service; . . . and  (3) to prohibit

15  discrimination against persons because of their service in the uniformed services."

16      172.  38 U.S.C.A. §4311(a) states, "person who is a member of, applies to

17  be a member of, performs, has performed, applies to perform, or has an obligation

18  to perform service in a uniformed service shall not be denied initial employment,

19  reemployment, retention in employment, promotion, or any benefit of employment

20  by an employer on the basis of that membership, application for membership,

21  performance of service, application for service, or obligation

22

23      173.  38 U.S.C.A. §4311(b) provides: "An employer may not discriminate

24  in employment against or take any adverse employment action against any person

25  because such person (1) has taken an action to enforce a protection afforded any

26  person under this chapter. . . or (4) has exercised a right provided for in [same]."

27      174.  There are no exhaustion requirements or administration remedies

28  required under USERRA 38 U.S.C. §4323 (a)(2)(A).

---

**COMPLAINT FOR DAMAGES**

175.   PLAINTIFF gave CITY proper notice of his military service.

176.   PLAINTIFF reported to work and/or submitted as application for reemployment within USERRA'S statutory time frame.

177.   DEFENDANTS' actions violated 20 CFR Part 1002.196 failing to re-employ to PLAINTIFF to equivalent status, seniority and pay.

178.   DEFENDANTS' constructive termination of PLAINTIFF and failure to provide benefits of employment violated the rights afforded PLAINTIFF under USERRA, 38 U.S.C. §§4301, et seq.

179.   DEFENDANTS acted voluntarily, deliberately and willfully in its conduct of terminating PLAINTIFF in violation of the USERRA.

180.   DEFENDANTS deprived the PLAINTIFF of his rights, privileges and immunities which were clearly established at the time DEFENDANTS acted herein and the DEFENDANTS knew or should have known that their conduct would violate these rights, privileges and immunities.  DEFENDANTS acted with the intent to deprive the PLAINTIFF of his rights, privileges and immunities by purposely and intentionally subjecting PLAINTIFF to adverse employment actions, including termination, for exercising his rights under USERRA.

181.   Absent DEFENDANTS' retaliation, harassment and discrimination against PLAINTIFF as described herein, PLAINTIFF would have remained a CITY employee, would not have suffered adverse employment actions and would not have been injured.

182.   DEFENDANTS took the aforementioned actions against PLAINTIFF in direct retaliation for and in response to PLAINTIFF'S insistence that he be permitted to return to work in accordance with the provisions of USERRA.

183.   DEFENDANTS' acts and omissions were done by DEFENDANTS under color of state law in their capacity as a municipality chartered under state law, and as policy making authorities to which DEFENDANT CITY delegated its

governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

184.  DEFENDANTS' acts and omissions described above were taken by CITY'S official policy makers as members charged with such responsibility.  It was or should have been plainly obvious to any reasonable policy-making official of CITY that the acts and omissions of DEFENDANTS as alleged herein, taking singly or in conjunction, directly violated and continued to violate PLAINTIFF'S clearly established constitutional and statutory rights.

185.  In addition, the individual DEFENDANTS, and each of them, who are law enforcement professionals and sworn to uphold the constitution, deliberately engaged in harassment, discrimination, retaliation, and violations of PLAINTIFF'S clearly established constitutional rights.  As such, and by the nature of their conduct, the individual DEFENDANTS are not entitled to qualified immunity.

186.  DEFENDANTS' actions caused PLAINTIFF to suffer injury, damage, loss, or harm.  As a further legal result of the above-described conduct of DEFENDANTS, PLAINTIFF was and will be hindered, prevented, and/or precluded from performing PLAINTIFF'S usual activities, school work, education, and occupation, causing PLAINTIFF to sustain damages for loss of income, wages, earning, and earning capacity, and other economic damages, in an amount to be ascertained according to proof.

187.  As a legal result of the above-described conduct of DEFENDANTS, PLAINTIFF suffered incidental, consequential, liquidated and/or special damages, and will sustain attorneys' fees and costs in an amount according to proof.

188.  The aforesaid acts directed towards PLAINTIFF were carried out with a conscious disregard of his rights and with the intent to vex, injure, and annoy him, such as to constitute oppression, fraud or malice pursuant to CCP §3294, entitling PLAINTIFF to punitive damages in a sum which is an amount appropriate

---

**COMPLAINT FOR DAMAGES**

to punish and set an example of the individual (non-municipal) DEFENDANTS, to deter such conduct in the future and to set an example for others.

## XV.

### ELEVENTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA MILITARY AND VETERANS ACT
*AGAINST ALL DEFENDANTS*

189.   PLAINTIFF repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

190.   California Military and Veterans Code §394 (b) provides: " No officer or employee of the state, or of any county, city and county, municipal corporation, or district shall discriminate against any officer, warrant officer or enlisted member of the military or naval forces of the state or of the United States because of that membership. No member of the military forces shall be prejudiced or injured by any officer or employee of the state, or of any county, city and county, municipal corporation, or district with respect to that member's employment, appointment, position or status or be denied or disqualified for or discharged from that employment or position by virtue of membership or service in the military forces of this state or of the United States."

191.   California Military and Veterans Code §394(d), provides: "No employer or officer or agent of any corporation, company, or firm, or other person, shall discharge any person from employment because of the performance of any ordered military duty or training or by reason of being an officer, warrant officer, or enlisted member of the military or naval forces of this state, or hinder or prevent that person from performing any military service or from attending any military encampment or place of drill or instruction he or she may be called upon to perform or attend by proper authority; prejudice or harm him or her in any manner in his or her employment, position, or status by reason of performance of military

service or duty or attendance at military encampments or places of drill or instruction; or dissuade, prevent, or stop any person from enlistment or accepting a warrant or commission in the California National Guard or Naval Militia by threat or injury to him or her in respect to his or her employment, position, status, trade, or business because of enlistment or acceptance of a warrant or commission."

192.   California Military and Veterans Code §394(g) provides: Any person violating this section is guilty of a misdemeanor. In addition, any person violating any of the provisions of this section shall be liable for actual damages and reasonable attorney's fees incurred by the injured party.

193.   California Military and Veterans Code §394 (h) provides: The remedies provided for in this section are not intended to be exclusive but are in addition to the remedies provided for in other laws, including Sections 51 and 52 of the Civil Code.

194.   DEFENDANTS actions as set forth above, were in violation of the California Military and Veterans Code §394 *et. seq.*

195.   As a legal result of the above-described conduct of DEFENDANTS, PLAINTIFF suffered incidental, consequential, liquidated and/or special damages, and will sustain attorneys' fees and costs in an amount according to proof.

196.   In doing the things alleged herein, DEFENDANTS acted with malicious intent to violate PLAINTIFF'S rights, or at least in conscious, reckless, and callous disregard of PLAINTIFF'S rights and to the injurious consequences likely to result from a violation of said rights.  General, special, and exemplary damages are sought according to proof.  Punitive damages are sought against the individual DEFENDANTS, according to proof.

//

//

# XVI.

# PRAYER

WHEREFORE, PLAINTIFF prays:

1.     For general, special, compensatory (including lost wages and lost employee benefits), exemplary, liquidated and punitive damages, as well as penalties according to proof;

2.     For costs of suit incurred herein;

3.     For attorneys' fees under 42 U.S.C. §1988, Cal. Civ. Code §3294, Cal. Civ. Code §52(b), Cal. Civ. Code §52.1(h), 38 U.S.C. §§4323(B) or as otherwise allowed by law;

4.     For a civil penalty of $25,000 pursuant to Civil Code §52;

5.     For an award of interest, including prejudgment interest, at the legal rate, as allowed by law; and

6.     For any and all other appropriate relief the Court deems necessary.

Dated:  October 23, 2008                    Respectfully Submitted,

LACKIE, DAMMEIER & MCGILL APC

By:     _____

Michael A. McGill, Esq.
Danielle K. Little, Esq.
*Attorneys for Plaintiff, Robert "Leo" McSweeney*

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### Central District of California

ROBERT "LEO" MCSWEENEY,

V.

CITY OF BELL, A Public Entity; CITY OF BELL
POLICE DEPARTMENT, A Public Agency;
ROBERT RIZZO, Individually and as City
Manager; BRUCE D. PRAET, In his Capacity As
the City Attorney; ANDY PROBST, Individually
and as Chief of Police; (Please see attachment)

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

CV08-07006  JFW  PLAx

TO: (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

    Danielle K. Little, SBN: 239784
    Lackie, Dammeier & McGill, APC
    367 North Second Avenue
    Upland, CA 91786

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

Terry Nafisi

CLERK

OCT 2 3 2008

DATE

(By) DEPUTY CLERK

AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____   _____
               Date                *Signature of Server*

                                      _____
                                        *Address of Server*

_____

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| McSweeney v. City of Bell, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (*Check only one box. Use a separate page for each type of party.*):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

MICHAEL CHAVEZ, Individually and as the Assistant Chief of Police; ANTHONY MIRANDA, Individually and as a Captain; STEVE FINKELSTEIN, Individually and as Captain; SERGIO CAMACHO, Individually and as a Lieutenant; and DOES 1 THROUGH 100 INCLUSIVE;

Defendants.

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Robert "Leo" McSweeney | CITY OF BELL, A Public Entity; CITY OF BELL POLICE DEPARTMENT, A Public Agency; ROBERT RIZZO, Individually and as City Manager; (Please see attachment) |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Los Angeles | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): Los Angeles |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Danielle K. Little, Esq.<br>LACKIE, DAMMEIER & MCGILL APC<br>367 N. Second Avenue<br>Upland, CA 91786          Tel: (909) 985-4003 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. Section 1983, et seq. Violation of individual and civil rights and liberties

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | | ☐ 220 Foreclosure | ☑ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | | ☐ 230 Rent Lease & Ejectment | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | | ☐ 240 Torts to Land | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | | ☐ 245 Tort Product Liability | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | | ☐ 290 All Other Real Property | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes

If yes, list case number(s):

FOR OFFICE USE ONLY:   Case Number:   **CV08-07006**

CV-71 (07/05)                                    CIVIL COVER SHEET                                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b). **RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

IX. **VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   Los Angeles County, Plaintiff

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
   Los Angeles County, All Defendants

List the California County, or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
   Los Angeles County

X. **SIGNATURE OF ATTORNEY (OR PRO PER):** _Nell K Lee_     Date _October 23, 2008_

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

Attachment to **Civil Cover Sheet**:

BRUCE D. PRAET, In his Capacity As the City Attorney; ANDY PROBST, Individually and as Chief of Police; MICHAEL CHAVEZ, Individually and as the Assistant Chief of Police; ANTHONY MIRANDA, Individually and as a Captain; STEVE FINKELSTEIN, Individually and as Captain; SERGIO CAMACHO, Individually and as a Lieutenant; and DOES 1 THROUGH 100 INCLUSIVE;

Defendants.